```
           IN The United States DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

UNITED STATES OF AMERICA, ex  }
rel. CARTER JONES,            }
                              }
     Plaintiff,               }   CIVIL ACTION NO.
                              }   05-AR-1267-S
v.                            }
                              }
WESTWIND GROUP, INC., et al., }
                              }
     Defendants.              }
```

**MEMORANDUM OPINION**

The court has before it a motion filed by the United States of America ("the United States") pursuant to Rule 59, F.R.Civ.P., seeking to clarify or, in the alternative, to alter or amend the order of January 18, 2006, which dismissed the above-entitled *qui tam* action for want of prosecution. A brief procedural history will put the motion in perspective.

The original action was brought under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, by Carter Jones as *relator* on behalf of the United States, alleging that eleven named defendants had defrauded the United States. Before the expiration of the sixty-day period provided by 31 U.S.C. § 3730(a)(2) within which the United States could intervene, the United States sought an extension, and the court granted such an extension to and including September 16, 2005. On September 16, 2005, the United States filed a paper entitled "Notice Of The United States That It Is Not Intervening At This Time". The paper said, *inter alia*:

> At this time, the United States' investigation into the allegation [sic] in the complaint has not been completed. Accordingly, the United States is not able to decide, as of the Court's deadline, whether to proceed with the action. Therefore, the United States hereby notifies the Court that it is not intervening at this time. However, the United States' investigation will continue.
>
> Although the United States is not intervening at this time, it respectfully refers the Court to 31 U.S.C. § 3730(b)(1), which allows the relator to maintain the action in the name of the United States; providing, however, that the "action may be dismissed only if the Court and the Attorney General give written consent to the dismissal and their reasons for consenting".

The United States submitted with its said notice a proposed order that (1) would have unsealed the complaint; (2) would have required service of the complaint by *relator*; (3) would have kept the remainder of the file under seal; (4) would have provided that the United States "is entitled to intervene in this action, for good cause, at any time"; (5) would have provided that "all orders of this court will be sent to the United States"; and (6) would have provided that, "should the *relator* or the defendants propose that this action be dismissed, settled, or otherwise discontinued, the court will solicit the written consent of the United States before ruling or granting its approval". The court declined to enter the order as proposed by the United States. Instead, on September 19, 2005, the court ordered the file unsealed and ordered the *relator* to proceed with service on defendants, not only of the summons, but of all previous orders and pleadings.

Instead of complying with the court's order, the *relator*, on November 17, 2005, nearly two months after being ordered to serve the defendants, filed a motion to dismiss the action "without prejudice".  Simultaneously, the United States filed a consent to the dismissal "without prejudice to the rights of the United States".  After defendants were given notice of the proceedings, they objected to *relator*'s motion to dismiss without prejudice, and on December 15, 2005, the court conducted a hearing on *relator*'s motion.  When the court indicated its intention to deny *relator*'s motion, *relator*'s counsel moved for leave to withdraw, suggesting that the burden of proceeding without the resources of the United States was too great for *relator*.  The said motion to withdraw was granted, but *relator* himself was expressly ordered to initiate service of process by 4:30 p.m., January 13, 2006, or his action would be "dismissed for want of prosecution".  *Relator* took no action whatsoever by 4:30 p.m., January 13, 2006, and on January 18, 2006, the court, as promised, entered an order that dismissed "the above-entitled action . . . for want of prosecution".

Between the order of December 15, 2005, and the order of January 18, 2006, the United States, although it was fully aware of the status of the proceedings, filed no objection to the court's promise to dismiss the action for want of prosecution if *relator* failed to prosecute.

3

The present admitted object of the United States is to preserve its alleged right, and the right of all other possible *relators*, to pursue these same False Claims Act claims against these defendants at some future time.  The first question for the court is whether the United States has standing to invoke Rule 59, F.R.Civ.P., after it formally elected not to intervene and declined to become a party, leaving the *relator* with control over the prosecution of the case.  This particular "case or controversy" ended on January 18, 2006.  The United States was never a party, by its own choice.  The standing of a third-party beneficiary to a contract in dispute provides a helpful analogy.  An "interested party" who has not intervened when he could have done so has no standing to file a Rule 59 motion after the entry of a final judgment even though it may adversely affect him.  He was never a **party**.  Rule 59 is, by definition, for "**the parties**".  This means that Rule 59 is not for **non-parties**.

Assuming, *arguendo*, that the United States has some sort of quasi-standing under Rule 59, it cites 31 U.S.C. § 3730(b)(1) for the proposition that "the action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting".  This statutory provision necessarily refers to, and is limited to, the time period during which the United States can intervene and while the complaint is under seal.  The requirement that the consent of the

4

Attorney General be obtained does not last forever.  Without addressing the obvious time limitation based on the period for intervention, the Second Circuit in *Minotti v. Lensink*, 895 F.2d 100, 103-04 (2d Cir. 1990), made clear that 31 U.S.C. § 3730(b)(1) "continues to apply only where the plaintiff seeks **voluntary** dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a), and not **where the court orders dismissal**". (emphasis supplied).  To reinforce its point, the Second Circuit added this footnote: "If the consent provision were intended to apply even to court-ordered dismissals, its language requiring permission of the court, as well as of the Attorney General, before dismissal of a private action would make little sense". *Id*. at 104 n.1.  Last but not least, the Second Circuit added:

> Once the United States formally has declined to intervene in an action (as it has in this case), however, little rationale remains for requiring consent of the Attorney General before an action may be dismissed.  Rather, the Attorney General's refusal "to enter the suit may be taken as tantamount to the consent of the District Attorney to dismiss the suit".

*Id*. at 104 (citing *United States ex rel. Lockland v. Eicher*, 56 F. Supp. 972, 973 (D.D.C. 1944)).

This same reasoning was employed by Honorable J. Foy Guin, Jr. of this court in *United States ex rel. Fender v. Tenet Health Care Corp.*, 105 F. Supp. 2d 1228 (N.D. Ala. 2000), but Judge Guin eloquently took it a step further by explaining: "To give the Attorney General the right to look over the shoulder of the court

and tell it what it may and may not do is violative of the separation of powers and repugnant to this court". *Id*. at 1232. If the instant case were being dismissed on the motion of the *relator*, whether with or without prejudice, it might be necessary for this court to decide whether the Attorney General's consent is required for a **voluntary** dismissal, but that is not the case here.  This dismissal was initiated by the court.  The court did precisely what it said it would do if the *relator* did not prosecute, no more and no less.  The dismissal was anything but voluntary.

The motion of the United States is, in effect, a request for free legal advice, something this court respectfully declines to provide it.  The legal effect, or the ultimate significance of, an involuntary dismissal of this action after the United States declined to intervene, will be a matter for judicial determination only if and when one of these defendants interposes a defense of claim preclusion in a subsequent action brought by the United States or by another *relator* on behalf of the United States.  Only then would a judge assigned to such a case be called upon to decide the issue the United States wants this court now gratuitously to pre-judge.  The United States even wants this court in advance to look out for the prospective, theoretical interest of some unknown *relator* who had less of a connection to this case than the United States had at the moment

6

of the dismissal.

## Conclusion

If the final judgment entered by this court on January 18, 2006, is unclear or incorrect, no **party** asks for its clarification or correction. For this reason, and because the order speaks for itself, the purported motion of the United States will be denied by separate order.

DONE this 22nd day of February, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE